IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JAMIE SOLIS GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAXIMUS HEALTH SERVICES, INC.,<br><br>Defendant. | Civil Action No. 1:23-cv-2129<br><br>[Marion Superior Court Case No. 49D12-2310-CT-042115]<br><br>**DEFENDANT'S NOTICE OF REMOVAL UNDER 28 U.S.C. § 1442(a)(1)** |

**NOTICE OF REMOVAL**

Defendant Maximus Health Services, Inc., a wholly owned subsidiary of Maximus, Inc. (together "Maximus"),[1] provides this Notice of Removal that it is removing this matter to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Maximus used Progress Software Corporation's ("Progress") MOVEit Transfer application ("MOVEit") to send and receive data to assist Maximus in carrying out its contractual duties with the United States federal government, including reviewing appealed Medicare coverage decisions and providing technical infrastructure for review and analysis of ALJ appellate opinions. In May 2023, an unauthorized third-party used a previously unknown, "zero-day" vulnerability in the MOVEit software to gain access to certain files in Maximus's MOVEit application (the "MOVEit Incident"). Plaintiff

---

[1] Maximus Health Services, Inc. has changed its name to Maximus US Services, Inc.

Jamie Solis Garcia brought this case on behalf of a putative class of all Indiana residents impacted by the MOVEit Incident.

As described further below, the putative class includes numerous individuals whose data was in Maximus's possession due to Maximus's performance of its contractual duties on behalf of the federal government. Therefore, Maximus is removing this action to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

## NATURE OF THE REMOVED ACTION

1. On October 27, 2023, Plaintiff filed a Class Action Complaint against Maximus in Marion County Superior Court, Case No. 49D12-2310-CT-042115. Maximus accepted service on October 27, 2023. Exhibit A, State Court Record.

2. Plaintiff alleges that "one of Maximus' vendors (MOVEit) was hacked by a bad actor" in May 2023. Exhibit B, Class Action Complaint and Demand for Jury Trial, ¶¶ 4, 32.

3. Plaintiff contends that Maximus "retained and stored [her] Personal Information and [Personal Health Information] on its computer systems, including the systems affected by the Data Breach." *Id.* Plaintiff alleges that she is a person whose "Personal Information" was "compromised in the Data Breach." *Id.* ¶ 24.

4. Plaintiff alleges her claims are typical of other Class Members, who were allegedly damaged in the same way. *Id.* ¶ 78. The putative class includes "All natural persons residing in Indiana whose Personal Information was maintained on Maximus'

systems that were compromised as a result of the breach announced by Maximus on August 11, 2023." *Id.* at ¶ 72.

5. Plaintiff alleges that Maximus failed "to properly secure and safeguard sensitive and confidential personally identifiable information ('PII'), including names, addresses, telephone numbers, email addresses, dates of birth, Social Security numbers and protected health information" which alleged harmed Plaintiff and the putative class." *Id.* ¶ 1.

6. Specifically, Plaintiff claims that "Maximus is covered by [the Health Insurance Portability and Accountability Act of 1996 ('HIPAA')] (see 45 C.F.R. § 160.102) and as such is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ('Standards for Privacy of Individually Identifiable Health Information'), and Security Rule ('Security Standards for the Protection of Electronic Protected Health Information'), 45 C.FR. Part 160 and Part 164, Subparts A and C." Ex. B, Compl. at ¶ 49.

7. Plaintiff contends that Maximus failed to comply with HIPAA by failing to do the following:

    a. "Maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks";

    b. "Adequately protect Plaintiff's and the Class Members' Personal Information";

c. "Ensure the confidentiality and integrity of electronically protected health information created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1)";

d. "Implement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1)";

e. "Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i)";

f. "Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D)";

g. "Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3)";

h. "Take safeguards to ensure that Maximus' business associates adequately protect protected health information";

i. "Conduct the four-factor Risk Analysis following the Data Breach";

j. "Properly send timely notice to Plaintiff and the Classes pursuant to 45 C.F.R.§§ 164.400-414";

> k. "Ensure compliance with the electronically protected health information security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or";
>
> l. "Train all members of its workforce effectively on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out its functions and to maintain security of protected health information, in violation of 45 C.F.R. § 164.530(b)."

*Id.* ¶ 57.

8. Based on these allegations, Plaintiff asserts the following claims on behalf of a putative class of Indiana residents: (1) negligence, Ex. B, Compl. ¶¶ 83–102; (2) negligence per se, *id.* ¶¶ 103–118; (3) breach of confidence, *id.* ¶¶ 119–26; (4) "invasion of privacy – intrusion upon seclusion, *id.* ¶¶ 127–33; (5) breach of contract, *id.* ¶¶ 134–39; (6) breach of implied contract, *id.* 140–46; (7) unjust enrichment, *id.* ¶¶ 147–63; (8) breach of fiduciary duty in violation of Indiana Code § 24-5-0.5-3, *id.* ¶¶ 164–67; (9) relief under the Declaratory Judgment Act, *id.* 168–177.

## BASIS FOR REMOVAL

9. Maximus removes this case to federal court under the federal officer removal statute. 28 U.S.C. § 1442(a). The federal officer removal statute provides a basis for subject matter jurisdiction. *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020). The statute authorizes removal of state court cases against "any officer (or any person

acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

10. The federal officer removal statute must be "liberally construed." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007); *Baker*, 962 F.3d at 941.

11. When evaluating a defendant's allegation in support of federal officer removal, courts examine whether the allegations are "facially plausible." *Baker*, 962 F.3d at 941; *Betzner*, 910 F.3d at 1015 (applying the Rule 8(a) federal pleading standings to allegations in a notice of federal officer removal).

12. Private defendants routinely remove state court actions under this statute when acting under color of federal office. *See, e.g., Baker*, 962 F.3d at 939; *Betzner*, 910 F.3d at 1013.

13. To remove a case under the federal officer removal statute, the defendant must show that it: "(1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Baker*, 962 F.3d at 941 (quoting *Betzner*, 910 F.3d at 1014). Maximus meets each of these requirements.

### Maximus is a "person"

14. For a defendant to remove a case under the federal officer removal statute, the defendant must show it is "a person within the meaning of the statute." *Baker*, 962 F.3d at 941 (quoting *Betzner*, 910 F.3d at 1014).

15. Because corporations qualify as "person[s]" under the statute, *Betzner*, 910 F.3d at 1015; *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012), this element is satisfied.

### Maximus is "acting under" federal authority

16. To remove a case under the federal officer removal statute, the defendant must also show that it is "'acting under' any 'agency' or 'officer' of 'the United States.'" *Watson*, 551 U.S. at 147. The Seventh Circuit "liberally construes" the term "acting under." *Ruppel*, 701 F.3d at 1181. A person "acts under" the United States when it undertakes "an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Id.* This includes situations "where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete." *Betzner*, 910 F.3d at 1015 (quoting *Ruppel*, 701 F.3d at 1181).

17. Maximus assisted the federal government in carrying out its Medicare obligations as a Qualified Independent Contractor ("QIC") and as an Administrative Qualified Independent Contractor ("AdQIC"). Exhibit C, Declaration of Patrick Pinnell at ¶ 3; *see generally* 42 U.S.C. § 1395ff(b)(1)(a), (c)(3)(B) (requiring the Secretary to enter into contracts with QICs "to conduct reconsiderations of initial determinations").

18. Medicare is a federal health insurance program for the elderly and disabled. "Medicare contracts with private insurance carriers to determine coverage claims in the first instance." *Int'l Rehab. Scis. Inc. v. Sebelius*, 688 F.3d 994, 997 (9th Cir. 2012) (citing 42 U.S.C. § 1395u(a); 42 C.F.R. § 405.920). If the carrier denies a claim, then the affected party can have "another contractor redetermine the claim." *Id.* (citing 42 C.F.R. § 405.940; 42

7

U.S.C. § 1395ff(a)(3)(A)–(B)).  The claim can be appealed yet again to a QIC.  *Id.* (citing 42 C.F.R. § 405.960; 42 U.S.C. § 1395ff(b)(1)(A), (c)(3)(B)).  If a party is dissatisfied with the QIC's decision, then the claim can be heard before an Administrative Law Judge ("ALJ").  *Id.* (citing 42 C.F.R. §§ 405.1000 & 405.1002; 42 U.S.C. 1395ff(d)(1)(A)).

19.  As a QIC, Maximus makes appellate coverage decisions on behalf of the federal government for Medicare beneficiaries pursuant to 42 C.F.R. § 405.960; 42 U.S.C. § 1395ff(b)(1)(A), (c)(3)(B)).  *See also* Ex. C, Pinnell Decl. at ¶ 3.  In this capacity, Maximus receives case files from a separate contractor who conducted an initial claim review.  *Id.* ¶¶ 5-6.  Maximus then uses its own clinical judgement and the guidelines from the Centers for Medicare and Medicaid Services to carry out the federal government's Medicare claims review obligations.  *Id.* ¶ 7.

20.  Maximus has also operated as an AdQIC.  *Id.* ¶ 10.  As an AdQIC, Maximus was responsible for reviewing ALJ decisions to create "effectuation notices" summarizing the ALJ's reasoning.  *Id.* ¶ 12.  Those "effectuation notices" are used to provide correct coverage to Medicare participants on behalf of the federal government.  *Id.* at ¶ 12.  As an AdQIC, Maximus also analyzed Medicare appeals program data and submitted its analysis to CMS to assist the Federal government in meeting its obligations.  *Id.* at ¶ 13.  Maximus's responsibilities in administering Medicare programs and providing technical infrastructure for review of ALJ appellate opinion, *see id.* at ¶¶ 3, 10, 14, are related to its contractual obligations to assist the federal government.

21.  Maximus regularly used MOVEit to send and receive data it used to carry out its contracts with the federal government related to its role as a QIC and AdQIC.

Ex. C, Pinnell Decl. at ¶¶ 5–14. This included the data of thousands of individuals with Indiana mailing addresses whose data was in the MOVEit application impacted in the MOVEit Incident. *Id.* at ¶ 4. By definition, these individuals are members of the putative class. *Cf.* Ex. B., Compl. at ¶ 72 ("All natural persons residing in Indiana whose Personal Information was maintained on Maximus' systems that were compromised as a result of the breach announced by Maximus on August 11, 2023.").

### Maximus is "acting under color of federal authority"

22. Next, a defendant must show that it is "is acting under color of federal authority." *Baker*, 962 F.3d at 941 (quoting *Betzner*, 910 F.3d at 1014). When, like here, there is a "causal connection between the charged conduct and asserted official authority" or the actions are "connected or associated" with acts under the color of federal authority, the defendant is "acting under the color of federal authority." *Baker*, 962 F.3d at 943 (quoting *Ruppel*, 701 F.3d at 1181 ).

23. The "acting under color of federal authority" element does not require a defendant to "show that the federal government directed the specific conduct that led to the incident, or that any specific conduct taken pursuant to federal direction caused the incident." *Leli v. V2X Inc.*, 2023 WL 3476057, at *3 (S.D. Ind. May 16, 2023). Also, when the plaintiff's relationship to a defendant "derive[s] solely from the performance of [its] contractual duties owed to the federal government," then the "acting under color of federal authority" element is satisfied. *Id.*

24. Thousands of members of the putative class derive their relationship with Maximus solely from the work Maximus performed as a QIC or AdQIC. Ex. C, Pinnell Decl. at ¶ 4.

25. In addition, Maximus's use of MOVEit is associated with acts that it took to carry out the administration of a federal program in its statutorily designated duty as a QIC and as an AdQIC.

26. As a designated QIC and AdQIC, Maximus possessed personal information at issue in this case for thousands of putative class members via MOVEit solely to perform its contractual duties to the federal government, whether that be to review or analyze claims or to create "effectuation notices." Maximus used MOVEit to transfer data related to its performance of its contractual obligations to assist the federal government in administering its Medicare program. *Id.* at ¶ 3–14. Further, the data that thousands of putative class members allege was accessed improperly was in Maximus's MOVEit application as a result of Maximus's use of MOVEit in fulfilling its obligations to the federal government. *Id.*

27. Thus, the MOVEit Incident occurred while Maximus was performing its contractual duties to the federal government. Further, thousands of putative class members' relationships to Maximus are derived solely from the performance of Maximus' contractual duties with the federal government.

28. Courts have upheld federal officer removal in actions arising out of cybersecurity incidents that allegedly impacted personal information that included health-related data. *Mixon v. CareSouth Carolina, Inc.*, No. 4:22-CV-00269-RBH, 2022 WL

1810615, at *2 (D.S.C. June 2, 2022) (federal officer removal requirements were satisfied in a data breach action involving a federally-funded community health center); *Ford v. Sandhills Med. Found., Inc.*, No. 4:21-CV-02307-RBH, 2022 WL 1810614, at *3 n.5 (D.S.C. June 2, 2022) (federal officer removal requirements were satisfied in a data breach action involving a "federally deemed community health center"); *Krandle v. Refuah Health Ctr., Inc.*, No. 22-CV-4977 (KMK), 2023 WL 2662811, at *11 (S.D.N.Y. Mar. 28, 2023) (healthcare company properly removed data breach class actions under § 1442).

### Maximus has a colorable federal defense

29. The final element for removal under Section 1442 merely requires that the defendant assert a "colorable federal defense." *See Mesa v. California*, 489 U.S. 121, 129–30 (1989). "Courts have imposed few limitations on what qualifies as a colorable federal defense." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008). The defendant needs only to raise a claim that is "defensive" and "based in federal law." *Mesa*, 489 U.S. at 130 (1989); *Isaacson*, 517 F.3d at 138. This is because the federal officer removal statute "was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981).

30. "[A] colorable federal defense under § 1442(a) need only be plausible" because it "reflects Congress' intent to have federal defenses litigated in federal court." *Betzner*, 910 F.3d at 1014, 1015. Thus, the defense need not be "clearly sustainable." *Id.* at 1016.

31. Where a defendant denies violating its duties under federal law, it raises a colorable federal defense. *See Doe I v. UPMC*, 2020 WL 4381675, at *6 (W.D. Penn. July 31, 2020).

32. Whether Maximus violated HIPAA is a core part of Plaintiff's claims. *See* Ex. B, Compl. at ¶¶ 48–58, 89–92, 104–107, 112. Plaintiffs assert that Maximus had duties under HIPAA and that it violated those duties. *Id.* at ¶¶ 48–58, 89–92, 104–107, 112. HIPAA lies at the center of many of Plaintiffs' claims, as is whether Maximus violated the requirements of HIPAA.

33. Maximus intends to argue that it complied with its duties under HIPAA. Defending against this allegation will require interpretation of federal law and is a "duty-based defense." *UPMC*, 2020 WL 4381675, at *6 ("In the federal officer removal context, a duty-based defense must be one that is 'based on a federal duty to act, or the lack of such a duty,' such as denying alleged violations of a federal duty."); *see also Isaacson*, 517 F.3d at 139("compliance with federal law . . . provides a colorable federal defense."). Courts have specifically found that a defendant that denies violating its duties under HIPAA raises a colorable federal defense. *UPMC*, 2020 WL 4381675, at *6 ("Because [Defendant] denies violating its duties under HIPAA, [Defendant] raises a colorable federal defense."). Maximus has therefore established a colorable federal defense.

34. Plaintiffs also allege that Maximus violated its duties under the Federal Trade Commission Act ("FTC Act"). Ex. B, Compl. at ¶¶ 93, 109–110, 112–114, 116. These allegations are a central part of Plaintiffs' suit.

35. Maximus intends to raise the duty-based defense that it complied with its duties under the FTC Act. Thus, Maximus has established an additional colorable federal defense. *See Isaacson,* 517 F.3d at 139; *UPMC,* 2020 WL 4381675, at *6.

36. Maximus may identify additional defenses that involve federal law as it continues to review the Complaint.

## PROCEDURAL REQUIREMENTS

37. All the procedural requirements for removal under 28 U.S.C. § 1446 are satisfied.

38. Maximus is filing this Notice of Removal within thirty days of "formal" acceptance of service of the Complaint, which occurred on October 27, 2023. 28 U.S.C. § 1446(b); *see also Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (noting that "formal service" is required to start the thirty day period under § 446(b)).

39. This Court is the corresponding federal court for Marion County Superior Court of Indiana, where the suit was originally filed. Venue is therefore proper under 28 U.S.C. §§ 101 and 1441(a).

40. Maximus has attached a copy of the Complaint and all other publicly available filings from the state court docket as Exhibit A, State Court Record (Docket, Complaint, Appearance by Attorney in Civil Case for Jamie Solis Garcia, Summons, Appearance by Attorney in Civil Case for Jamie Solis Garcia, E-Filing Appearance by Attorney in Civil Case for Maximus, Defendant's Notice of Automatic Enlargement of

Time to Answer or Otherwise Respond to Complaint) . The state court record is complete as of November 27, 2023.

41. Upon filing this Notice, Maximus will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Marion County Superior Court. 28 U.S.C. § 1446(d).

**WHEREFORE**, notice is given that this action is removed from the Marion County Superior Court of Indiana to the United States District for the Southern District of Indiana.

Dated: November 27, 2023

/s/ *Ann O'Connor McCready*
Ann O'Connor McCready (Atty. No. 32836-53)
Christine A. Walsh (Atty. No. 36444-45)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square
Suite 3500
Indianapolis, IN 46204-2023
Telephone: (317) 713-4497
Email: AMcCready@taftlaw.com
  CWalsh@taftlaw.com

Allison M. Holt Ryan, *pro hac vice pending*
Lance Y. Murashige, *pro hac vice pending*
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
allison.holt-ryan@hoganlovells.com
lance.murashige@hoganlovells.com

*Counsel for Maximus Health Services, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 27, 2023, copies of the foregoing Notice of Removal and accompanying exhibits were sent via electronic mail and overnight delivery, as indicated below, to:

Jacob R. Cox
Cox Law Office
1606 N. Delaware Street
Indianapolis, Indiana 46202
jcox@coxlaw.com

Jason A. Shartzer
Shartzer Law Firm, LLC
156 E. Market Street
10th Floor, Suite 1000
Indianapolis, Indiana 46204
jshartzer@shartzerlaw.com

Blake G. Abbott
Paul J. Doolittle
Poulin Willey Anastopoulo, LLC
32 Ann Street
Charleston, SC 29403
blake@akimlawfirm.com
pauld@akimlawfirm.com

*Counsel for Plaintiff Jamie Solis Garcia, Individually and on Behalf of all Others Similarly Situated*

                                                  /s/ *Ann O'Connor McCready*
                                                *Counsel for Maximus Health Services, Inc.*